IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


**WILLIAM ALLEN COLEMAN,**

 Plaintiff,

vs.             Case No. 1:08cv225-MP/WCS

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

 Defendant.

_____/


## REPORT AND RECOMMENDATION

  This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D. LOC. R. 72.2(D). Plaintiff proceeds in this case *pro se*. Plaintiff has filed two memoranda in support of his complaint, and a supplement to the complaint. Docs. 25, 19, and 5. Defendant has filed a memorandum in support of the decision to deny Plaintiff's application for benefits. Doc. 24.

**Procedural status of the case**

  Plaintiff, William Allen Coleman, applied for disability insurance benefits. Plaintiff was 52 years old at the time of the administrative hearing, has two years of college, and

has past relevant work as a janitor and housekeeper at the Veteran's Administration Hospital.  Plaintiff alleges disability due to epilepsy.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted).  The court must give "substantial deference to the Commissioner's decision."  Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to

determine whether the conclusions reached are rational.' "  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)-(f):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  If the claimant

carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy.  Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Evidence from the administrative hearing**

The administrative hearing was held on July 11, 2007.  Plaintiff has an associates degree in mental health and social services, and is trained to work with people in mental health institutions.  R. 520.  His last job was in August, 2005, with the VA hospital as a housekeeper or janitor, where he worked for eight and one-half years.  R. 520-521.  He was required to lift up to 200 pounds in that job.  R. 521.  He is six feet two inches tall and weighs 200 pounds.  R. 520.

Plaintiff has a driver's license.  R. 521.  He said that he is not supposed to drive due to his seizure problem and was driven to the hearing by a friend.  Id.

Plaintiff testified that his most serious problem is his seizure disorder and the medication he must take.  R. 522.  He testified that he still had "seizure activity" but the most serious generalized seizures, gran mal, are suppressed by medication.  Id.  He said that when he is under stress, he loses his orientation.  Id.  He said that such loss of orientation occurs about once a week.  Id.  He is still conscious when this occurs.  R. 523.  He said that he thought his medication caused this partial seizure activity.  Id.  He said the feeling of loss of orientation lasts about half an hour and occurs suddenly,

without warning.  *Id.*  He said that these episodes make him feel depressed and out of control.  R. 526.  It takes about 15 minutes to recover from one of these.  *Id.*

Plaintiff said that the medication he takes for epilepsy makes him clumsy and uncoordinated.  R. 526.  He said this is a daily side effect.  *Id.*

Plaintiff denied any connection between his seizures and his episodes of uncontrolled anger.  R. 525.  He takes medication for that problem, which helps him calm down and sleep.  *Id.*  Plaintiff said that he took two kinds of medication for anxiety.  R. 524.  He said that his anxiety is controlled to some extent by the medication, and it helps him to sleep.  *Id.*  He also takes aspirin for hypertension and medicine for type II diabetes.  *Id.*

Plaintiff also suffers from hepatitis C, which gives him a feeling of lethargy.  R. 524.  There are no other symptoms from that ailment.  *Id.*

Other than these, Plaintiff said he had "no physical impairments."  R. 524.

Plaintiff said that he washed dishes, and that is the extent of the work he does at home.  R. 524.  He said he reads a lot, and is a minister.  R. 529.  He has friends at his church.  *Id.*

Plaintiff said he was not comfortable lifting objects because he was clumsy.  R. 530.  He thought he could stand for about 40 minutes, and must readjust himself when he sits due to back discomfort.  *Id.*

**Medical evidence**

Plaintiff was admitted to the North Florida/Georgia Veteran's Hospital on August 30, 2004, after a new onset seizure.  R. 137.  This apparently is the hospital where he worked.  An EEG produced abnormal readings.  R. 138.  On the recommendation of

neurology, Plaintiff was started on Dilantin.  *Id.*  Plaintiff also sought psychological counseling to help him cope with stress, and that was provided.  *Id.*  He was stable when discharged.  *Id.*  He was discharged with a prescription for Phenytoin (Dilantin) for seizures.  R. 139, 223.  He was advised not to drive a vehicle until otherwise instructed by neurology.  R. 139.  This was the first time he was prescribed Dilantin.  R. 223.

A psychological consultation was provided on August 31, 2004.  R. 253.  Plaintiff said that everything he did placed him under stress, and that he could "no longer persist" in his current level of activity.  *Id.*  He said that his preference would be to work in ministry but he could not get by financially in that work.  *Id.*

On September 15, 2004, was seen again at the VA Hospital for a follow-up to check his Dilantin level.  R. 222.  He felt confused and depressed, and wondered if he had gone back to work too soon.  *Id.*  He also felt that he was misplacing important things like his mortgage statement.  *Id.*  He said that he felt like he should be disabled due to his current condition.  *Id.*  He was not driving then, and "wonder then why he has to come to work."  *Id.*  He was worried about having a seizure at work, but was told that "that there wouldn't be a better place to have a seizure as working at [a] hospital."  *Id.*  He reported that his new medication made him sleepy, and it was thought by the treating physician that this would resolve in two or three weeks.  R. 224.

Plaintiff had a cervical spine imaging on November 1, 2004, which revealed mild cervical spine degenerative disease, with no evidence of spondylolisthesis, and with patent neural foramina.  R. 164.

On March 24, 2005, Plaintiff was seen again for a neurological evaluation.  R. 370.  He apparently had not had another seizure, and his treating physician said that he

could resume driving a motor vehicle.  *Id*.  He was to continue seizure precautions, "no swimming, shower only."  *Id*.  The plan was to continue Dilantin for another six months and then slowly discontinue it.  *Id*.

On August 9, 2005, Omid Rabbani, M.D., stated that he has been Plaintiff's treating physician.  R. 105.  He had treated Plaintiff since August 30, 2004, the date of his seizure.  R. 106.  He said that it was possible for Plaintiff to experience cognitive problems "such as with his memory" due to "his chronic medical condition and medications that he is taking."  R. 105.

On September 2, 2005, sought psychological counseling.  R. 185.  He presented with agitation, depression, and impulse control issues.  *Id*.  He attributed these symptoms to post traumatic stress disorder.  *Id*.  The physician who conducted the evaluation, Jeffrey T. Ferraro, M.D., said: "During my assessment he did not meet criteria for PTSD and I am aware of the secondary gain in which this diagnosis would achieve."  *Id*.  It was noted that Plaintiff had quit his job as a janitor at the VA four days earlier due to stress.  R. 180-181.

On September 9, 2005, Plaintiff had another EEG with normal results.  R. 173.

On February 1, 2006, Dr. Rabbani noted that following the seizure in August, 2004, Plaintiff was "instructed to return to work on seizure precautions."  R. 106.  Dr. Rabbani said he had spoken to Plaintiff over the telephone many times since March 24, 2005, about some adverse cognitive difficulties that could be attributed to Phenytoin.  *Id*.  Phenytoin was discontinued, and Trileptal was prescribed.  *Id*.  Since the switch in medications, Dr. Rabbani said that Plaintiff had had "occasional events that by clinical description are compatible with partial seizures."  *Id*.  Dr. Rabbani said that Plaintiff

could not return to his prior work due to epilepsy.  *Id.*  He said he could not operate heavy machinery.  *Id.*  He also said he has not been able to "continue working since August 30, 2005," due to his "cognitive difficulty that affected his ability to perform job-related tasks."  *Id.*  Dr. Rabbani concluded that he thought that Plaintiff's application for social security disability benefits was "appropriate."  *Id.*

On March 12, 2007, during a psychological counseling session, Plaintiff reported that he "is remodeling his house."  R. 433.  It was noted that he was pleasant, cooperative, and was mildly depressed and with some possible paranoia.  R. 434.  The diagnosis was moderate depression, anxiety, and intermittent explosive disorder.  *Id.*

On April 18, 2007, Plaintiff was diagnosed with diabetes.  R. 426-428.

On May 21, 2008, the American Education Service determined that Plaintiff met the requirements for discharge of his student loans "based on total and permanent disability."  R. 509.  The loan obligation was assigned to the Department of Education "for review and an initial determination of eligibility for the discharge."  *Id.*

**Legal analysis**

The Administrative Law Judge determined that Plaintiff has the residual functional capacity to perform light work limited to a minimum stress environment and avoidance of heights and machinery.  R. 25.  He determined at step four that with this residual functional capacity, Plaintiff could return to his past relevant work as a janitor.  R. 29.

While unnecessary to the opinion, he also determined that Plaintiff was not disabled based upon his age, education, work experience, and residual functional

capacity, applying the "grids."[1]  *Id.*  The "grids" may be used at step five after the Commissioner has determined at step four that a claimant is unable to return to his past relevant work.  <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1142 (11th Cir. 2004).  Since, as discussed ahead, the ALJ properly determined that Plaintiff has the residual functional capacity to return to his past relevant work, it is unnecessary for the court to determine whether Plaintiff had any significant limitations that would preclude the use of the "grids" instead of vocational testimony.[2]

Plaintiff argues that the ALJ erred in failing to give substantial weight to the opinion of his treating physician, Dr. Rabbani.  The opinion of a claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary.  <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997).  The reasons for giving little weight to the opinion of a treating physician must be supported by substantial evidence, <u>Marbury v. Sullivan</u>, 957 F.2d 837, 841 (11th Cir. 1992), and clearly articulated.  <u>Phillips v. Barnhart</u>, 357 F.3d at 1241.  "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error."  <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1053 (11th Cir. 1986).

---

[1] Appendix 2 to Subpart P of Part 404 – Medical-Vocational Guidelines, found at: http://www.ssa.gov/OP_Home/cfr20/404/404-ap11.htm

[2] "Exclusive reliance on the grids is not appropriate either when a claimant is unable to perform a full range of work at a given functional level or when a claimant has non-exertional impairments that significantly limit basic work skills. . . .  The grids also may not be used when the claimant's non-exertional impairments are severe enough to preclude a wide range of employment at the level indicated by the exertional impairments. . . . ."  <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1242 (11th Cir. 2004).

The ALJ did not give substantial weight to the opinion of Dr. Rabbani, a treating physician. He reasoned that the determination of whether Plaintiff's application for social security benefits was "appropriate" is a conclusion reserved to the Commissioner. This is true. Dr. Rabbani's expertise is in determining the limiting effects of Plaintiff's impairments, not the ultimate question of whether he is entitled to disability benefits.

The ALJ then reviewed the medical evidence in detail, finding that Dr. Rabbani's opinion was not supported by the medical evidence. R. 27-29. This finding is supported the evidence discussed above. The only work limitation imposed by Dr. Rabbani was that Plaintiff could not operate heavy machinery. In March, 2005, his treating physician had found that Plaintiff could drive a motor vehicle. Except for cognitive limitations, Plaintiff testified that he has no significant physical limitations. There is no evidence that Plaintiff suffered another gran mal seizure, and he said that his medication had suppressed those seizures. His September, 2005, EEG was normal. As noted in the record, working at the VA hospital was a good work place for one who might suffer a seizure while at work. The reference by Dr. Rabbani to Plaintiff's "cognitive" limitations is not supported by objective medical evidence. While the medical record does contain notes that Plaintiff complained of cognitive problems, there is no objective evidence as to the persistence, length, or severity of these episodes. The letter from the American Education Services finding that Plaintiff was eligible to request forgiveness of his student loans due to disability is of little weight without information as to the criteria underlying that determination. Finally, Dr. Ferraro determined that Plaintiff did not meet the criteria for post traumatic stress disorder.

## Conclusion

Considering the record as a whole, the findings of the Administrative Law Judge correctly followed the law and were based upon substantial evidence in the record. The decision of the Commissioner to deny Plaintiff's application for benefits should be affirmed.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED**.

**IN CHAMBERS** at Tallahassee, Florida, on June 2, 2009.

          s/     William C. Sherrill, Jr.
          **WILLIAM C. SHERRILL, JR.**
          **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**